O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

STEVEN H. GIL                    ) Case No. CV 15-03151-KK
                                 )
                    Petitioner,  )
                                 ) MEMORANDUM AND ORDER
          v.                     )
                                 )
S. PEERY,                        )
                                 )
                    Respondent.  )
_____  )

   Steven H. Gil ("Petitioner"), a California state prisoner proceeding *pro se*
and *in forma pauperis*, has filed a Petition for Writ of Habeas Corpus ("Petition")
pursuant to 28 U.S.C. § 2254(d), challenging his conviction in Los Angeles County
Superior Court for first degree murder. The parties have consented to the
jurisdiction of the undersigned United States Magistrate Judge, pursuant to
28 U.S.C. § 636(c). Petitioner asserts a single claim for instructional error in
support of his request for federal habeas relief. Because Petitioner's claim fails on
its merits, the Petition is DENIED and the action is DISMISSED with prejudice.

**I.**

**CLAIM FOR RELIEF**

   Petitioner's claim, as presented in his Petition, is as follows:

1    (1) <u>Claim One:</u> The trial court violated Petitioner's due process rights by

2    failing to instruct the jury on voluntary intoxication.

3    Pet. at 5.[1]

## II.

## PROCEDURAL HISTORY

On October 10, 2012, following a jury trial in California Superior Court for the County of Los Angeles, Petitioner was convicted of first degree murder in violation of California Penal Code section 187.  Lodgment ("lodg.") No. 1, Vol. 2 at 368-369.[2]  The conviction arose out of allegations Petitioner and co-defendant Steven Zamora murdered Gerardo Fernandez on or about January 7, 2012.  1 CT 72-73.  On November 13, 2012, the trial court sentenced Petitioner to 26 years to life.  2 CT 406-07.

On April 16, 2013, Petitioner appealed the judgment to the California Court of Appeal.  Lodg. No. 2.  On November 5, 2014, the California Court of Appeal affirmed Petitioner's conviction on direct appeal in a reasoned decision.  Lodg. No. 5.

On December 17, 2014, Petitioner filed a Petition for Review with the California Supreme Court.  Lodg. No. 6.  On January 21, 2015, the California Supreme Court summarily denied review of the appeal.  Lodg. No. 7.

---

[1]    The Court refers to the pages of the Petition as if they were consecutively paginated.

[2]    The Court's citations to Lodgments refer to the documents lodged by Respondent in support of his Motion to Dismiss and Answer.  ECF Docket Nos. ("Dkt.") 10, 20.  Lodgment No. 1 is a copy of the Clerk's Transcript of Petitioner's trial court proceedings.  Lodgment No. 8 is a copy of the Reporter's Transcript from Petitioner's trial court proceedings.  Any further citations to Lodgment No. 1 will be abbreviated as "CT," and any further citations to Lodgment No. 8 will be abbreviated as "RT."

2

On April 28, 2015, Petitioner filed the instant Petition, setting forth two claims for relief: (1) instructional error; and (2) cruel and unusual punishment and ineffective assistance of counsel.  Dkt. 1.

On May 29, 2015, Respondent filed a Motion to Dismiss contending Petitioner's second claim was not exhausted.  Dkt. 9.  On June 1, 2015, the Court issued an order finding the second claim to be unexhausted, and directing Petitioner to elect from five options: (1) file a response clearly explaining why the claim is in fact exhausted, (2) voluntarily dismiss the Petition, (3) voluntarily dismiss the unexhausted claim, (4) request a stay pursuant to Rhines v. Weber, 544 U.S. 269, 277-78, 125 S. Ct. 1528, 161 L. Ed. 2d 440 (2005), or (5) request a stay pursuant to Kelly v. Small, 315 F.3d 1063, 1070-71 (9th Cir. 2003), overruled on other grounds by Robbins v. Carey, 481 F.3d 1143 (9th Cir. 2007).  Dkt. 12.  The Court denied Respondent's Motion to Dismiss as moot.  Id.

On July 9, 2015, Petitioner responded to the Court's Order by voluntarily dismissing his second claim.  Dkt. 17.

On August 12, 2015, Respondent filed an Answer, contending Petitioner's remaining instructional error claim is meritless.[3]  Dkt. 19.  Petitioner has not filed a traverse.  The matter thus stands submitted and ready for decision.

///

///

///

---

[3]     Respondent also argues Petitioner's claim is barred by the non-retroactivity doctrine set forth in Teague v. Lane, 489 U.S. 288, 109 S. Ct. 1060, 103 L. Ed. 2d 334 (1989).  However, the Ninth Circuit has expressly held such instructional error claims are not barred by Teague.  See Bradley, 315 F.3d at 1098; see also Zavala v. Gonzalez, 537 F. App'x 684, 685 (9th Cir. 2013) (affirming the holding in Bradley as "clearly established federal law" allowing for federal habeas relief under Teague).

3

# III.

## RELEVANT FACTS

For a summary of the facts, this Court relies on the California Court of Appeal's reasoned decision affirming Petitioner and Zamora's judgments on direct appeal. Petitioner is referred to individually as "Gil" and jointly with Zamora as "Appellants":[4]

> [T]he evidence established on January 5, 2012, Freddy Sosa (aka Thief) texted Gil that Gerardo Fernandez (the decedent, aka Cuba) and Allan Felix (aka Terco) wrote "Fuk Thief," and crossed out the name Thief in graffiti. Gil asked Sosa to photograph the changes and show them to Gil the next day. Gil later asked Sosa for the number of "Sinners." Gil texted Sinners, "This is Sikone Sinner wen me an Freddy *smash* on Cuba Terco U and smokes need nt to gt mad those fools aint gonna cross my lil homie out an disrespect my hood" (*sic*; italics added) (hereafter, the Smash statement). Downey Police Detective Rolando Renteria testified "smash" meant to create some sort of injury.
>
> Sosa sent a phone number to Gil. Gil later texted Zamora, asking what he was doing Saturday. Zamora asked Gil what was going on, and Gil replied, "Drama

---

[4]   Because this factual summary is drawn from the California Court of Appeal's opinion, "it is afforded a presumption of correctness that may be rebutted only by clear and convincing evidence." Moses v. Payne, 555 F.3d 742, 746 n.1 (9th Cir. 2008) (citations omitted). Petitioner has not challenged the accuracy of this summary. Moreover, this Court has independently reviewed the trial record and finds the summary accurate.

fool ... I crossed out that fool Cuba cuz he try to tell my lil homie Thief to gt n his hood ... I gt two bitches for Saturday wat u wanna kik it." Zamora replied, "Man homie fuk that foo *lets light that foo up* that foo ain't nobody.... Was up I'm down [for] wit the bitches haha ...." (*sic*; italics added) (hereafter, the Light statement; bracketed material in the original). Renteria testified, "light someone up" meant to shoot someone.

Natalie Gonzalez testified on January 7, 2012, she was with appellants and Emily Cabral. Everyone was drinking that night at Zamora's house. Appellants shared a 24–pack of beer.[1] The group left to look for Sosa but did not find him. Gil drove the group to a restaurant parking lot in Downey, then spoke to someone on the phone. Fernandez and Felix were in the parking lot.

Appellants eventually exited the car while Gonzalez and Cabral remained inside. Gil, Felix, and Fernandez conversed. Fernandez and Felix walked towards Fernandez's nearby apartment complex. Zamora or Gil followed. As Fernandez and Felix ascended stairs, Felix heard someone say, "Hey, come here." Fernandez went downstairs. Felix lost sight of Fernandez, then heard gunshots. Fernandez had been fatally shot. Felix saw the shooters run back to their car.

---

[1] Cabral expressly testified appellants, Cabral, and Gonzalez were drinking at Zamora's house, but never expressly testified Gil drank rum or smoked weed.

5

Gonzalez and Cabral heard gunshots after appellants exited the car. Appellants ran back to the car, entered, and left quickly. Gonzalez asked what happened but appellants did not answer. Gil turned up the radio. The People introduced into evidence before Gil's jury that on January 8, 2012, Gil texted someone, "I set him up" and, later that day, "Yea, fkn I had set him up my other homie shot five times at both of them."

Renteria interviewed appellants separately. (Each appellant's statement was admitted into evidence before his jury only.)

. . .

On January 25, 2012, Renteria interviewed Gil. Gil initially denied knowledge of the January 7, 2012 incident. However, Gil later said the following. Fernandez crossed out South Gate Trece, Gil became angry, and Gil went to the parking lot. Appellants went to the parking lot with two girls. Gil asked Fernandez for $20 worth of methamphetamine, and Fernandez walked away and went behind a dumpster. Appellants followed and shot Fernandez. There was only one gun. Gil did not pull the trigger. The detective asked Gil why Gil thought Fernandez had been shot, and Gil replied, "I don't know. Everybody dies."

Appellants presented no defense evidence.

Lodg. No. 5 at 2-8.

**IV.**

1

## STANDARD OF REVIEW

2      Under the Antiterrorism and Effective Death Penalty Act of 1996

3  ("AEDPA"), a federal court may not grant habeas relief on a claim adjudicated on

4  its merits in state court unless the adjudication:

5              (1) resulted in a decision that was contrary to, or involved

6              an unreasonable application of, clearly established

7              Federal law, as determined by the Supreme Court of the

8              United States; or

9              (2) resulted in a decision that was based on an

10             unreasonable determination of the facts in light of the

11             evidence presented in the State court proceeding.

12  28 U.S.C. § 2254(d).

13     "'[C]learly established Federal law' for purposes of § 2254(d)(1) includes

14  only 'the holdings, as opposed to the dicta, of th[e] [U.S. Supreme] Court's

15  decisions'" in existence at the time of the state court adjudication.  White v.

16  Woodall, ___ U.S. ___, 134 S. Ct. 1697, 1702, 1706, 188 L. Ed. 2d 698 (2014).

17  However, "circuit court precedent may be 'persuasive' in demonstrating what law

18  is 'clearly established' and whether a state court applied that law unreasonably."

19  Maxwell v. Roe, 628 F.3d 486, 494 (9th Cir. 2010).

20     Overall, AEDPA presents "a formidable barrier to federal habeas relief for

21  prisoners whose claims have been adjudicated in state court." Burt v. Titlow, ___

22  U.S. ___, 134 S. Ct. 10, 16, 187 L. Ed. 2d 348 (2013).  The federal statute presents

23  "a difficult to meet . . . and highly deferential standard for evaluating state-court

24  rulings, which demands that state-court decisions be given the benefit of the

25  doubt." Cullen v. Pinholster, 563 U.S. 170, 131 S. Ct. 1388, 1398, 179 L. Ed. 2d

26  557 (2011) (internal citation and quotation marks omitted).  On habeas review,

27  AEDPA places the burden on petitioners to show the state court's decision "was so

28

7

1  lacking in justification that there was an error well understood and comprehended

2  in existing law beyond any possibility for fairminded disagreement." Harrington v.

3  Richter, 562 U.S. 86, 131 S. Ct. 770, 786-87, 178 L. Ed. 2d 624 (2011).  Put

4  another way, a state court determination that a claim lacks merit "precludes federal

5  habeas relief so long as fairminded jurists could disagree" on the correctness of

6  that ruling. Id. at 786.  Federal habeas corpus review therefore serves as "a guard

7  against extreme malfunctions in the state criminal justice systems, not a substitute

8  for ordinary error correction through appeal." Id. (internal citation and quotation

9  marks omitted).

10  Where the last state court disposition of a claim is a summary denial, this

11  Court must review the last reasoned state court decision addressing the merits of

12  the claim under AEDPA's deferential standard of review. Maxwell, 628 F.3d at

13  495. See also Berghuis v. Thompkins, 560 U.S. 370, 380, 130 S. Ct. 2250, 176 L.

14  Ed. 2d 1098 (2010) (when a state supreme court denies discretionary review of a

15  decision on direct appeal, the appellate court's decision is the relevant state-court

16  decision for purposes of AEDPA's standard of review); Ylst v. Nunnemaker, 501

17  U.S. 797, 803-04, 111 S. Ct. 2590, 115 L. Ed. 2d 706 (1991) (holding that

18  California Supreme Court, by silently denying petition for review over appellate

19  decision, presumably did not intend to change the California Court of Appeal's

20  analysis).

21  Here, the California Court of Appeal's opinion disposing of Petitioner's

22  direct appeal stands as the last reasoned decision with respect to the claim raised in

23  the instant Petition. See Lodg. No. 5.  The Court of Appeal's reasoned decision

24  will, thus, be reviewed under AEDPA's deferential standard of review for claims

25  "adjudicated on the merits."  28 U.S.C. § 2254(d); Richter, 562 U.S. at 99.

26  ///

27  **V.**

28

8

1

**DISCUSSION**

2    **A.    <u>Background</u>**

3            Petitioner argues the trial court erred in refusing to instruct his jury on

4    voluntary intoxication.  Pet. at 5.  Petitioner claims the court should have instructed

5    his jury pursuant to CALCRIM No. 625, which provides:

6                    You may consider evidence, if any, of the

7                defendant's voluntary intoxication only in a limited way.

8                You may consider that evidence only in deciding whether

9                the defendant acted with an intent to kill[,] [or] [the

10               defendant acted with deliberation and premeditation . . .

11               .]

12                   A person is voluntarily intoxicated if he or she

13               becomes intoxicated by willingly using any intoxicating

14               drug, drink, or other substance knowing that it could

15               produce an intoxicating effect, or willingly assuming the

16               risk of that effect.

17                   You may not consider evidence of voluntary

18               intoxication for any other purpose.

19   CALCRIM 625.

20   **B.    <u>State Court Opinion</u>**

21           In rejecting Petitioner's instructional error claim, the California Court of

22   Appeal first held the evidence did not support the requested instruction.  Lodg. No.

23   5 at 12.  The Court of Appeal found, "[t]he sole evidence [Petitioner drank

24   anything at or before the time of the shooting was the evidence that, on the night of

25   January 7, 2012, and prior to the shooting, [Petitioner] was drinking at Zamora's

26   house, and appellants drank a 24–pack of beer."  <u>Id.</u>  The court held "[t]his was not

27   substantial evidence [Petitioner] was intoxicated at the time of the shooting" or that

28

9

1  Petitioner "was intoxicated to the point he failed to formulate intent to kill,
2  premeditation, or deliberation." Id.

3       The Court of Appeal also held the failure to give the instruction was "not
4  prejudicial under any conceivable standard." Id. (citing Chapman v. California,
5  386 U.S. 18, 24, 87 S. Ct. 824, 828, 17 L. Ed. 2d 705 (1967)). The court reasoned
6  as follows:

7            [T]he rest of the evidence in this case provided
8            overwhelming evidence Gil harbored intent to kill,
9            premeditation, and deliberation.  The People prosecuted
10           Gil for murder with the degree of the murder being first
11           degree based solely on the theory the murder was willful,
12           deliberate, and premeditated.  The jury found Gil guilty
13           of first degree murder.

14  Lodg. No. 5 at 12.

15  **C.    <u>Legal Standard</u>**

16       Claims of error in state jury instructions are generally a matter of state law
17  and do not usually invoke a constitutional question.  Gilmore v. Taylor, 508 U.S.
18  333, 342-343, 113 S. Ct. 2112, 124 L. Ed. 2d 306 (1993).  "Claims that merely
19  challenge the correctness of jury instructions under state law cannot reasonably be
20  construed to allege a deprivation of federal rights."  Van Pilon v. Reed, 799 F.2d
21  1332, 1342 (9th Cir. 1986); see also Menendez v. Terhune, 422 F.3d 1012, 1029
22  (9th Cir. 2005) ("Any error in the state court's determination of whether state law
23  allowed for an instruction . . . cannot form the basis for federal habeas relief.");
24  Dunckhurst v. Deeds, 859 F.2d 110, 114 (9th Cir. 1988) (an instructional error
25  "does not alone raise a ground cognizable in a federal habeas corpus proceeding").

26       A jury instruction violates due process only if "the ailing instruction by itself
27  so infected the entire trial that the resulting conviction violates due process."

28

1   Estelle v. McGuire, 502 U.S. 62, 72, 112 S. Ct. 475, 116 L. Ed. 2d 385 (1991)

2   (quoting Cupp v. Naughten, 414 U.S. 141, 147, 94 S. Ct. 396, 38 L. Ed. 2d 368

3   (1973)).  The instruction must be considered in the context of the trial record and

4   the instructions as a whole.  Henderson v. Kibbe, 431 U.S. 145, 154, 97 S. Ct.

5   1730, 52 L. Ed. 2d 203 (1977); see also Middleton v. McNeil, 541 U.S. 433,

6   437-38, 124 S. Ct. 1830, 158 L. Ed. 2d 701 (2004).

7        "[A] defendant is [constitutionally] entitled to an instruction as to any

8   recognized defense for which there exists evidence sufficient for a reasonable jury

9   to find in his favor."  Bradley v. Duncan, 315 F.3d 1091, 1098 (9th Cir. 2002).

10   However, errors in jury instructions involving "omissions or incorrect descriptions

11   of elements are considered trial errors" subject to a harmless error analysis.  Neder

12   v. United States, 527 U.S. 1, 8-11, 119 S. Ct. 1827, 144 L. Ed. 2d 35 (1999).  A

13   petitioner is not entitled to habeas relief on a claim of instructional error unless

14   such error had a "substantial and injurious effect or influence in determining the

15   jury's verdict."  See Brecht v. Abrahamson, 507 U.S. 619, 637-38, 113 S. Ct. 1710,

16   123 L. Ed. 2d 353 (1993).

17        Thus, habeas relief is only available if the state court's determination the

18   error was harmless beyond a reasonable doubt, was contrary to or an unreasonable

19   application of Chapman.  Davis v. Ayala, ___ U.S. ___, 135 S. Ct. 2187, 2198

20   (2015) (holding the Brecht test subsumes the limitations imposed by AEDPA,

21   because under either standard the U.S. Supreme Court "may not overturn the [state

22   court's] decision unless that court applied Chapman 'in an "objectively

23   unreasonable" manner'").  When a Chapman decision is reviewed under AEDPA,

24   "a federal court may not award habeas relief under § 2254 unless the harmlessness

25   determination itself was unreasonable."  Fry v. Pliler, 551 U.S. 112, 119, 127 S. Ct.

26   2321, 168 L. Ed. 2d 16 (2007) (emphasis in original).  A state court's decision is

27   not unreasonable if "'fairminded jurists could disagree' on [its] correctness."

28

1  Richter, 562 U.S. at 101 (quoting Yarborough v. Alvarado, 541 U.S. 652, 664, 124
2  S. Ct. 2140, 158 L. Ed. 2d 938 (2004)).  Petitioner "therefore must show that the
3  state court's decision to reject his claim 'was so lacking in justification that there
4  was an error well understood and comprehended in existing law beyond any
5  possibility for fairminded disagreement.'"  Ayala, 135 S. Ct. at 2199 (citing
6  Richter, 562 U.S. at 103).

7  **D.   Analysis**

8        The California Court of Appeal's decision rejecting Petitioner's instructional
9  error claim was not unreasonable.  The failure to instruct on a theory of defense
10  which was not relied upon by the defense, does not violate due process.  Bashor v.
11  Risley, 730 F.2d 1228, 1240 (9th Cir. 1984) (holding there was no fundamental
12  unfairness in court's failure to instruct regarding a defense, where petitioner's
13  counsel did not request such instructions and did not rely on such a defense).  Here,
14  Petitioner was convicted of first degree murder based on the prosecution's theory
15  that he aided and abetted Fernandez's murder by setting Fernandez up to be killed,
16  because Fernandez had disrespected Petitioner's friend Freddy (a.k.a. "Thief").
17  Petitioner's primary strategy at trial was not to assert a defense of voluntary
18  intoxication, but rather to deny any knowledge that Zamora was going to have a
19  gun or intended to kill Fernandez.  3 RT 128-140 (Petitioner's counsel's closing
20  arguments).[2]

21        Moreover, even if the state court's finding that the omission of an instruction
22  on voluntary intoxication was erroneous, this Court agrees the error was harmless

23
24  _____
25  [2]    Petitioner's counsel does not appear to have requested the instruction until
26  after the Court granted co-defendant Zamora's request for the instruction just
    before closing arguments.  3 RT 93-94.  The timing of Petitioner's request further
27  supports the fact that voluntary intoxication was not his primary defense
    throughout trial.
28

1   in light of the evidence presented at trial.  See Zavala, 537 F. App'x at 686
2   (affirming denial of habeas relief where trial court did not give voluntary
3   intoxication jury instruction, because any error was harmless).  Voluntary
4   intoxication is not an affirmative defense in California, see People v. Reyes, 52
5   Cal.App.4th 975, 982–83, 61 Cal.Rptr.2d 39 (1997), and to the extent that it was
6   relevant to the specific intent element of first degree murder under California Penal
7   Code § 187, there was overwhelming evidence demonstrating Petitioner knew
8   Zamora was going to kill Fernandez and intended for Fernandez to be killed.
9   Overwhelming evidence showed Petitioner formed the intent to kill Fernandez at
10  least two days before Fernandez was killed on Saturday, January 7, 2012.  On
11  January 5, 2012, Petitioner sent Zamora a text message about Thief being
12  disrespected by Fernandez, and Zamora responded "Man homie fuck that foo lets
13  *light that foo up* that foo ain't nobody."  3 RT 53 (emphasis added).  Officer
14  Renteria testified the term "light someone up" meant to shoot someone.  Id.
15  Petitioner responded "Ok on Saturday I have.  Wen im dne I will hit u up . . . could
16  we post up at ur pad or wat."  Id. at 54.  Zamora responded "Alrite fool on
17  Saturday foo shoooo."  Id.  About 20 minutes later, Zamora told Petitioner, "Fuk it
18  I'm down."  Id.  There is no evidence Petitioner was intoxicated during this text
19  message exchange.  Consistent with these messages, Fernandez was killed on
20  Saturday as discussed.

21       Petitioner further demonstrated his intent to kill Fernandez following
22  Fernandez's murder.  On January 8, 2012, the day after the murder, Petitioner
23  texted, "I set him up."  Petitioner later texted, "Yea, fkn I had set him up my other
24  homie shot five times at both of them."  Id. at 69.

25       Thus, from the evidence presented at trial, it was not objectively
26  unreasonable for the state court to conclude the jury would have convicted
27  Petitioner even if instructed with CALCRIM No. 625 regarding voluntary
28

13

intoxication, based on strong evidence Petitioner had the requisite mental state for first degree murder.  At a minimum, a fairminded jurist could agree with the Court of Appeal's decision finding the failure to give the instruction was harmless beyond a reasonable doubt and the failure to give the instruction did not "substantial[ly] . . . influence" the jury's verdict, the Court of Appeal's decision was not "contrary to, or . . . an unreasonable application of" <u>Chapman</u>.  <u>Ayala</u>, 135 S. Ct. at 2198; <u>see also</u> <u>Brecht</u>, 507 U.S. at 639.  Thus, Petitioner is not entitled to habeas relief.

## VI.

## <u>CONCLUSION</u>

IT IS THEREFORE ORDERED that Judgment be entered (1) denying the Petition for a Writ of Habeas Corpus; and (2) dismissing this action with prejudice.

Dated: September 29, 2015

_____
HONORABLE KENLY KIYA KATO
UNITED STATES MAGISTRATE JUDGE

14